UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM SHARP,

                    Plaintiff,

          v.                                                    **DECISION AND ORDER**
                                                                 12-CV-068S
ALLIED INTERSTATE INC.,

                    Defendant.

## I. INTRODUCTION

William Sharp upgraded his existing Verizon phone and internet service in May of
2007 by signing up for a "bundled" telecommunications package. That package included
phone and internet service from Verizon and satellite televison service from DirecTV.
When Sharp cancelled his package some two years later, DirecTV believed that Sharp
owed an outstanding balance of $86.96, and it retained the defendant, Allied Interstate
Inc., to collect the debt. Zealously seeking to secure the $86.96, Allied then placed 381
automated or "robo" calls to Sharp's cellular phone. Sharp admits that he provided his cell
phone number to Verizon at some point (though he cannot remember when), but he denies
ever disclosing it to DirecTV.

Sharp contends that these calls violated the Telephone Consumer Protection Act,
47 U.S.C. § 227 ("TCPA").[1]   Both parties now move for summary judgment. For the
following reasons, both motions are denied.

---

[1]Sharp initially brought a companion claim under the Fair Debt Collection Practices Act,  15 U.S.C.
§ 1692 *et seq.* Since then, the parties stipulated to the dismissal of this claim. (See Text Order; Docket No.
19.)

## II.  DISCUSSION

### A.    Summary judgment standard

Under Federal Rule of Civil Procedure 56 the court can grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact." A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

When both parties move for summary judgment, "each party's motion must be examined on its own merits, and . . . all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintal Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

### B.    Prior express consent

The TCPA prohibits any call made to a cell phone using an "automatic telephone dialing system or an artificial or prerecorded voice" unless those calls are made with "prior

express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii).[2]

Acting on authority granted to it by Congress, see 47 U.S.C. § 227(c)(1)-(4), the Federal Communications Commission ("FCC") has ruled that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary," and therefore a party does not violate the Act "by calling a number which was provided as one at which the called party wishes to be reached." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 8752, 8769 (1992). Specifically on the topic of debt-collection calls, the FCC later clarified that "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 564 (2008). It reasoned that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." Id. The FCC emphasized that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Id. The burden is on the creditor to establish that it obtained the necessary consent. Id.

This Court has previously ruled that a consumer has consented to calls even if the cell phone number was not provided at the time the account was opened. "It would strain

---

[2]There is also an exception, not relevant here, for emergency calls.

3

logic to conclude that a debtor's voluntary provision of a contact number at the time an account is opened would constitute 'prior express consent,'" this Court wrote in a 2011 decision, "but that the equally voluntary provision of a contact number sometime after the account is opened would not." Moore v. Firstsource Advantage, LLC, 07-CV-770, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011)

Although Allied does not know how it got the number, it argues that because neither Allied nor DirecTV have a policy of "harvesting" – or independently seeking out – phone numbers not previously provided to it, Allied must have got Sharp's cell phone number from either Sharp or Verizon. It further argues that, in accordance with FCC rulings, Sharp consented to robo calls by providing his cell number to Verizon. Relying on Moore, it contends that the time at which he consented is immaterial; his admission that he provided Verizon with the number at some point is sufficient to demonstrate consent.

But initially troubling is Allied's assumption that Sharp's provision of his cell number to Verizon constitutes permission for DirecTV (and its agent, Allied) to call Sharp at that number.  As noted, the FCC deems consent to be granted "only if the wireless number was provided by the consumer to the creditor." 23 F.C.C.R. at 564. Although neither party explains why DirecTV sought to collect the alleged debt when Sharp's bill was payable only to Verizon, (see Perry Dep. 14:2–9, 15:5–7), regardless of the explanation, there is no dispute that it was DirecTV – and not Verizon – that sought to collect the outstanding balance of $86.96. Aside from speculation that the number came from Verizon or Sharp, Allied and DirecTV cannot say definitely how it got the cell phone number. (Topazio Dep., 8:15 – 9:14; Miller Dep. 31:13–19,  32:10–15.) In fact, Allied admits that if it knew the number was connected to a cell phone, it would not have placed the autodailed calls.

4

(Miller Dep. 46:8–18.) And of course Sharp disputes ever disclosing the number to DirecTV. Allied provides no authority – or even an argument – for the proposition that consent for Verizon equates to consent for DirecTV. Of course, it could be argued that, if the number was given in connection with the telecommunications bundle purchase, DirecTV and Verizon could be considered synonymous for purposes of the TCPA. Indeed, there is no dispute that Sharp knew he was engaging the services of both Verizon and DirecTV when he registered for the new package. That argument *could* have been made; it was not. And it leads to the next problem: no one knows when Sharp provided the cell number to Verizon.

Of course, Sharp admits that he did disclose that number. But that admission is not as dispositive as Allied suggests. Sharp admits only that – *at some time* – he provided his cell phone to Verizon as an alternate number. But Sharp had Verizon telephone service long before he entered into a bundle package with DirecTV in May of 2007. (See Sharp Dep. 9: 1–12.) If Sharp provided the number to Verizon before that date, it cannot be said that the number was "provided during the transaction that resulted in the debt owed." See 23 F.C.C.R. at 564–65.

Much, then, is left to speculation. Allied contends that Sharp must overcome its evidence that it does not seek out cell phone numbers. But "[s]hould a question arise as to whether express consent was provided," wrote the FCC, "the burden will be on the creditor to show it obtained the necessary prior express consent." Id. at 565. Thus, Allied must *prove* that the "wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Id. at 654–65. Indeed, creditors "are in the best position to have records kept in the usual

course of business showing such consent, such as purchase agreements, sales slips, and credit applications." Id. at 565. But no records have been produced here; no signed documents, no sales slips, and no purchase agreements indicating that Sharp gave consent to DirecTV to call him on his cell phone.

This does not mean, however, that summary judgment in Sharp's favor is appropriate. Rather, as this Court has found in similar cases, drawing all inferences in Allied's favor, a dispute over consent – where the plaintiff claims he did not disclose his number and the creditor maintains that it does not harvest numbers – raises a genuine issue of material fact. See Moore, 2011 WL 4345703 at *11; Moltz v. Firstsource Advantage, LLC, No. 08-CV-239S, 2011 WL 3360010, at *1 (W.D.N.Y. Aug. 3, 2011).[3,4]

## III. CONCLUSION

For the reasons discussed above, neither party's motion for summary judgment is granted. Rather, there is a genuine issue of material fact as to whether Sharp consented to calls on his cell phone.

---

[3]Because summary judgment is not warranted on the question of whether Defendant violated the TCPA, summary judgment also is not proper on the question of whether any such violation was "willful," entitling Plaintiff to treble damages. See 47 U.S.C. § 227(b)(3).

[4]This Court has considered the various other arguments set forth by the parties. But they warrant no serious discussion. In Allied's case, it cites irrelevant portions of the TCPA that apply to residential phones, not cell phones. See, e.g., Levy v. Receivables Performance Mgmt., LLC, No. 11-CV-3155 JFB ARL, 2013 WL 5310166, at *6 (E.D.N.Y. Sept. 23, 2013) (discussing aspects of the TCPA cited by Allied and noting that they apply "only to autodialed calls made to residential landlines"). Allied's reliance on the portion of the DirecTV customer agreement informing Sharp to keep DirecTV informed of his current contact information is similarly unavailing and misguided. It does not – even if it could – compel Sharp to disclose his cell phone number.

For his part, Sharp cites cases from other jurisdictions that concern phone calls not related to the collection of a debt and therefore those cases do not apply – and in one case, specifically distinguish – the relevant FCC regulations. See Thrasher-Lyon v. CCS Commercial, LLC, No. 11 C 04473, 2012 WL 3835089, at *4 (N.D. Ill. Sept. 4, 2012) ("What we have here is different. Plaintiff's claim does not involve a debtor-creditor . . . relationship . . ."); Lusskin v. Seminole Comedy, Inc., No. 12-62173-CIV, 2013 WL 3147339 (S.D. Fla. June 19, 2013) (considering whether the plaintiff consented to receive promotional, non-debt-related, text messages).

**IV. ORDERS**

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment is (Docket No. 23) is DENIED.

FURTHER, that Plaintiff's Cross-Motion for Summary Judgment (Docket No. 32) is DENIED.


Dated:      March 23, 2014
            Buffalo, New York


                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court